IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:11-CR-237-D

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| BEVERLY ALLEN BAKER, ) | |
| ) | |
| Defendant. ) | |

On January 30, 2023, Beverly Allen Baker ("Baker" or "defendant"), proceeding pro se, moved for a sentence reduction under the First Step Act ("First Step Act"), Pub. L. No. 115-391, § 404, 132 Stat. 5194, 5222 (2018) [D.E. 276]. On November 6, 2023, Baker amended her motion for a sentence reduction and moved for compassionate release under the First Step Act, § 603(b) (codified as amended at 18 U.S.C. § 3582), and United States Sentencing Guidelines Amendment 821 ("Amendment 821") [D.E. 281]. On November 9, 2023, Baker filed an attachment to her motion for a sentence reduction that lists the names or signatures of Baker's family and friends who "look[] forward to [Baker's] return" to the community [D.E. 283]. On November 9, 2023, the government responded in opposition to Baker's motion for a sentence reduction [D.E. 284]. On December 19, 2023, Baker replied [D.E. 285]. As explained below, the court denies Baker's motion for a sentence reduction and for compassionate release.

I.

On June 27, 2012, a jury convicted Baker "of conspiracy to distribute 280 grams or more of cocaine base (crack) in violation of 21 U.S.C. § 846 (2006), and nine counts of crack distribution, 21 U.S.C. § 841 (2006)." United States v. Baker, 539 F. App'x 299, 301 (4th Cir. 2013) (per

curiam) (unpublished) ("Baker I"); see [D.E. 106]. On December 11, 2012, the court held Baker's sentencing hearing. See [D.E. 136, 138]. At the hearing, the court adopted the facts set forth in the Presentence Investigation Report ("PSR"). See Fed. R. Crim. P. 32(i)(3)(A)–(B). The court calculated Baker's total offense level to be 43, her criminal history category to be III, and her advisory guideline range to be life imprisonment on count one and 235 to 240 months' imprisonment on counts two through five and count seven. See [D.E. 139]; Sent. Tr. [D.E. 152] 1–27. After thoroughly considering all relevant factors under 18 U.S.C. § 3553(a), the court sentenced Baker to life imprisonment on count one and 240 months' concurrent imprisonment per count on counts two through five and count seven. See id. at 39–45; [D.E. 136, 138]. Baker appealed. See [D.E. 142].

On September 26, 2013, the United States Court of Appeals for the Fourth Circuit affirmed Baker's convictions, vacated Baker's sentence, and remanded for resentencing. See Baker I, 539 F. App'x at 301–06; [D.E. 156]. On September 3, 2014, this court resentenced Baker to 360 months' imprisonment on count one and 240 months' concurrent imprisonment per count on counts two through five and count seven. See Resentencing Tr. [D.E. 199] 19–24; [D.E. 189]. Baker appealed. See [D.E. 192]. On May 6, 2015, the Fourth Circuit affirmed Baker's sentence. See United States v. Baker, 601 F. App'x 231, 232–33 (4th Cir. 2015) (per curiam) (unpublished) ("Baker II").

On February 20, 2018, Baker, proceeding pro se, moved for a sentence reduction under 18 U.S.C. § 3582(c)(2), U.S.S.G. § 1B1.10, and Amendment 782. See [D.E. 237]. On March 30, 2018, Baker filed a second motion through counsel under 18 U.S.C. § 3582(c)(2), U.S.S.G. § 1B1.10, and Amendment 782. See [D.E. 240]. On February 15, 2019, the government responded. See [D.E. 257]. On February 28, 2019, Baker replied. See [D.E. 260]. On June 19, 2019, the court granted Baker's motion for reduction of sentence and reduced Baker's sentence on count one to 292 months' imprisonment. See [D.E. 261].

2

II.

On August 3, 2010, Congress enacted the Fair Sentencing Act of 2010 ("Fair Sentencing Act"), Pub. L. No. 111-220, 124 Stat. 2371, 2372 (codified as amended at 21 U.S.C. §§ 801 et seq.). Section 2 of the Fair Sentencing Act reduced statutory penalties by increasing the drug quantities necessary to trigger certain statutory minimums and maximums. For example, the amount of cocaine base (crack) necessary to trigger a 5 to 40 year sentence increased from 5 to 28 grams. Likewise, the amount of cocaine base (crack) necessary to trigger a 10 year to life sentence increased from 50 grams to 280 grams. See id. § 2, 124 Stat. at 2372.

On December 21, 2018, the First Step Act took effect. See First Step Act, 132 Stat. at 5249. The First Step Act makes the Fair Sentencing Act's reductions in mandatory minimum sentences apply retroactively to defendants who committed their "covered offense" of conviction before August 3, 2010. See id. § 404(a), 132 Stat. at 5222. Section 404(a) defines "covered offense" as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act . . . that was committed before August 3, 2010." Id. Under the First Step Act, a "court that imposed a sentence for a covered offense may . . . impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed." Id. § 404(b), 132 Stat. at 5222. A court that modifies a sentence under the First Step Act does so under 18 U.S.C. § 3582(c)(1)(B), which allows a court to "modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B); see United States v. Lancaster, 997 F.3d 171, 174 (4th Cir. 2021); United States v. Chambers, 956 F.3d 667, 671 (4th Cir. 2020), abrogated on other grounds by Concepcion v. United States, 597 U.S. 481 (2022); United States v. Wirsing, 943 F.3d 175, 183 (4th Cir. 2019). If a defendant qualifies, a court may consider a motion for a reduced sentence only if the defendant did

3

not previously receive a reduction pursuant to the Fair Sentencing Act and did not have a motion under the First Step Act denied "after a complete review of the motion on the merits." First Step Act § 404(c), 132 Stat. at 5222.

When a defendant moves for relief under the First Step Act concerning a covered offense, the court proceeds in two steps. First, the court recalculates the defendant's advisory guideline range "only to the extent it adjusts for the Fair Sentencing Act." United States v. Troy, 64 F.4th 177, 184 (4th Cir. 2023) (quotation omitted); see Concepcion, 597 U.S. at 486–87, 498 n.6 (the First Step Act does not permit a district court to recalculate a defendant's benchmark advisory guideline range "in any way other than to reflect the retroactive application of the Fair Sentencing Act"); United States v. Smith, 75 F.4th 459, 465 (4th Cir. 2023) (same). "[T]he First Step Act directs district courts to calculate the Guideline range as if the Fair Sentencing Act's amendments had been in place at the time of the offense." Concepcion, 597 U.S. at 498 n.6. "That Guideline range anchors the sentencing proceeding." Id. (quotation omitted). As the Fourth Circuit instructed in Smith, at step one a district court should use the drug quantity table in the 2011 Guidelines Manual containing the Fair Sentencing Act amendments. See Smith, 75 F.4th at 465 (discussing U.S. Sent'g Guidelines Manual app. C, amend. 750, 759 (U.S. Sent'g Comm'n 2011)); United States v. Reed, 58 F.4th 816, 818 (4th Cir. 2023).

Second, the court "may (and when raised by the parties, must) consider other legal and factual changes when deciding whether to impose a reduced sentence," such as postsentencing conduct. Troy, 64 F.4th at 184; see Concepcion, 597 U.S. at 486–87, 498 n.6; Smith, 75 F.4th at 465. "Nothing in . . . section [404(c) of the First Step Act]," however, "shall be construed to require a court to reduce any sentence pursuant to this section." First Step Act § 404(c), 132 Stat. at 5222; see, e.g., United States v. Swain, 49 F.4th 398, 400 (4th Cir. 2022); United States v. Gravatt, 953

4

F.3d 258, 261 (4th Cir. 2020); Wirsing, 943 F.3d at 184–86. The court "must consider the sentencing factors set forth in 18 U.S.C. § 3553(a) in section 404 proceedings." Swain, 49 F.4th at 400; see Troy, 64 F.4th at 185.

At step one, in accordance with Concepcion, Troy, and Smith, the court calculates Baker's new advisory guideline range to be 360 months' to life imprisonment based on a total offense level 40 and a criminal history category III. At Baker's resentencing hearing, the court found that Baker was accountable for approximately 8.2 kilograms of cocaine base (crack). See Resentencing Tr. 15. The 2011 Guidelines Manual with the applicable Fair Sentencing Act amendments prescribes a base offense level 36 for that drug weight. See U.S.S.G. § 2D1.1(c)(2) (2011). Baker received a two-level enhancement for possessing a firearm and a two-level enhancement for obstruction of justice. See PSR ¶¶ 53, 57; Resentencing Tr. 15. Accordingly, Baker's new total offense level is 40. Baker retains a criminal history category III. See PSR ¶ 62; accord [D.E. 240-2] 1. Thus, the bottom end of Baker's new advisory guideline range is greater than Baker's current sentence. See [D.E. 261].[1] This difference reflects Baker's 2019 resentencing, in which she received the benefit of later "amendments unrelated to the Fair Sentencing Act." Smith, 75 F.4th at 465.

At step two, the court has completely reviewed the entire record, Baker's arguments, the new advisory guideline range, and all relevant factors under 18 U.S.C. § 3553(a). See Chavez-Meza v. United States, 585 U.S. 109, 117–20 (2018); Pepper v. United States, 562 U.S. 476, 490–93 (2011); Smith, 75 F.4th at 464–66; Troy, 64 F.4th at 184; Chambers, 956 F.3d at 671–75; United States v. May, 783 F. App'x 309, 310 (4th Cir. 2019) (per curiam) (unpublished). Turning to the section

---

[1] Alternatively, even if the court credited Baker's argument that she has a criminal history category of I under Amendment 821, see [D.E. 281] 1, Baker's advisory guideline range under the 2011 Guidelines Manual would be 292 to 365 months' imprisonment. Thus, Baker's current sentence remains at the bottom of that advisory guideline range. See [D.E. 261].

5

3553(a) factors, Baker engaged in serious criminal behavior by conspiring to distribute a large quantity of drugs for several years. See Resentencing Tr. 5–24. Baker held a leadership role in her drug conspiracy and committed perjury in front of a grand jury. See PSR ¶¶ 16–18. Moreover, Baker is a recidivist and has convictions for carrying a concealed weapon, assault on a government official (two counts), and maintaining a vehicle, dwelling, or place for a controlled substance. See id. at ¶¶ 21–23. Baker also has performed poorly on supervision and has a spotty work history. See id. at ¶¶ 23–24, 42–49. Baker cites some positive steps she has taken while federally incarcerated, and the court credits Baker for her positive behavior. See [D.E. 276] 1–2; see also [D.E. 237-1]; [D.E. 240] 5–8; [D.E. 240-2] 1; [D.E. 285-1]; cf. Pepper, 562 U.S. at 491–92.

Baker asks for a time-served sentence and cites the 1:1 crack-powder ratio approved by the Department of Justice and some other district courts. See [D.E. 276] 1–2. The court rejects this benchmark. "[T]he proper 'benchmark' for the district court's analysis . . . is the impact of the Fair Sentencing Act on the defendant's Guidelines range." Smith, 75 F.4th at 465 (quotation omitted); see Troy, 64 F.4th at 184. Retroactive application of the Fair Sentencing Act does not reflect a 1:1 crack-powder ratio. See U.S.S.G. § 2D1.1(c) (2011). Likewise, the current guidelines do not reflect a 1:1 crack-powder ratio. See U.S.S.G. § 2D1.1(c) (2023). This court recognizes its discretion to use a 1:1 crack-powder ratio. See Kimbrough v. United States, 552 U.S. 85, 91 (2007). This court, however, agrees with the current ratio and declines to use a 1:1 crack-powder ratio.

The court has considered the First Step Act's remedial purpose. See Swain, 49 F.4th at 403. In light of Baker's advisory guideline range under the 2011 Guidelines Manual, her egregious criminal conduct, her serious criminal record, her poor performance on supervision, the need to promote respect for the law, the need to deter others, the need to provide just punishment, and the need to incapacitate Baker, the court declines to reduce Baker's sentence. Baker's sentence of 292

6

months' imprisonment is sufficient but not greater than necessary. See, e.g., 18 U.S.C. § 3553(a); Concepcion, 597 U.S. at 498–502; Chavez-Meza, 585 U.S. at 117–20; Pepper, 562 U.S. at 490–93; Smith, 75 F.4th at 464–69; Troy, 64 F.4th at 184–87; Chambers, 956 F.3d at 671–75.

In reaching this decision, the court has considered the entire record, Baker's arguments, and the section 3553(a) factors. Even if the court miscalculated the new advisory guideline range, the court would impose the same sentence of 292 months' imprisonment on count one as an alternative variant sentence in light of the entire record and the section 3553(a) factors discussed in this order. See 18 U.S.C. § 3553(a); United States v. Gomez-Jimenez, 750 F.3d 370, 382–86 (4th Cir. 2014); United States v. Hargrove, 701 F.3d 156, 161–65 (4th Cir. 2012).

III.

As for Baker's motion for compassionate release, under 18 U.S.C. § 3582(c)(1)(A), a court may reduce a defendant's term of imprisonment if (1) "extraordinary and compelling reasons warrant such a reduction" or (2) "the defendant is at least 70 years of age, has served at least 30 years in prison," and the Director of the Bureau of Prisons ("BOP") has determined the defendant is not a danger to another person or the community. 18 U.S.C. § 3582(c)(1)(A); see United States v. Bethea, 54 F.4th 826, 831 (4th Cir. 2022); United States v. Hargrove, 30 F.4th 189, 194 (4th Cir. 2022); United States v. High, 997 F.3d 181, 185–86 (4th Cir. 2021); United States v. Kibble, 992 F.3d 326, 330 (4th Cir. 2021) (per curiam); United States v. McCoy, 981 F.3d 271, 275–77 (4th Cir. 2020). A section 3582(c)(1)(A) sentence reduction must comport with the 18 U.S.C. § 3553(a) factors and applicable Sentencing Commission policy statements. See 18 U.S.C. § 3582(c)(1)(A); Hargrove, 30 F.4th at 194.

Before filing a motion under 18 U.S.C. § 3582(c)(1)(A), a defendant must "fully exhaust[] all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf

7

or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A); see United States v. Ferguson, 55 F.4th 262, 268 (4th Cir. 2022). This requirement is nonjurisdictional, and the government waives a defense based on section 3582(c)(1)(A)'s exhaustion requirements if the government does not timely raise it. See United States v. Muhammad, 16 F.4th 126, 129–30 (4th Cir. 2021).

When considering a defendant's compassionate release motion, the court determines whether extraordinary and compelling circumstances exist, and whether, in the court's discretion, those circumstances warrant relief in light of relevant factors in 18 U.S.C. § 3553(a) and applicable Sentencing Commission policy statements. See Hargrove, 30 F.4th at 194–95; High, 997 F.3d at 186; Kibble, 992 F.3d at 330–32. In evaluating the section 3553(a) factors, the court considers, inter alia, the nature and circumstances of the offense, the history and characteristics of the defendant, a defendant's post-sentencing conduct, the need to deter criminal behavior, the need to promote respect for the law, and the need to protect the public. See 18 U.S.C. § 3553(a); Chavez-Meza, 585 U.S. at 117–20; Pepper, 562 U.S. at 480–81; High, 997 F.3d at 186; Kibble, 992 F.3d at 331–32; United States v. McDonald, 986 F.3d 402, 412 (4th Cir. 2021); United States v. Martin, 916 F.3d 389, 398 (4th Cir. 2019). Although a court considers a defendant's post-sentencing conduct, rehabilitation alone is not an extraordinary and compelling reason for a sentence reduction. See 28 U.S.C. § 994(t); U.S.S.G. § 1B1.13(d); McCoy, 981 F.3d at 286 n.9.

The Sentencing Commission policy statement in U.S.S.G. § 1B1.13 applies to a defendant's compassionate release motion. See U.S.S.G. § 1B1.13(a). U.S.S.G. § 1B1.13(b) lists several extraordinary and compelling reasons, including (1) a defendant's medical circumstances; (2) a defendant's age, when coupled with serious physical or mental deterioration due to age and having served 10 years or 75 percent of his or her imprisonment term; (3) a defendant's family

8

circumstances; (4) a defendant who suffered sexual abuse, or physical abuse with serious bodily injury, at the hands of those with custody over the defendant while serving the term of imprisonment sought to be reduced; (5) any other reasons similar in gravity to those described in paragraphs (1) through (4) of the policy statement; or (6) a qualifying change in the law that produces a gross disparity between the defendant's unusually long sentence being served and the sentence likely to be imposed at the time the motion is filed, after fully considering the defendant's individual circumstances. See U.S.S.G. § 1B1.13(b). A defendant's rehabilitation alone is not an extraordinary or compelling reason, but it "may be considered in combination with other circumstances in determining whether and to what extent a reduction . . . is warranted." U.S.S.G. § 1B1.13(d). "[A]n extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a" sentence reduction. U.S.S.G. § 1B1.13(e).

Baker applied to her warden for compassionate release. See [D.E. 276-1]. On January 4, 2023, the Warden denied the release. See id. Therefore, the court addresses Baker's motions on the merits. See Ferguson, 55 F.4th at 268; Muhammad, 16 F.4th at 129–30; cf. [D.E. 284] 4.

Baker seeks compassionate release pursuant to section 3582(c)(1)(A). In support of her request, Baker submits that she has extraordinary and compelling circumstances because: (1) she suffers from medical conditions that may cause "severe complications" if she contracts COVID-19; (2) Amendment 821 reduces her criminal history category; and (3) she received an "unusually long sentence" relative to "one that would be imposed today using the crack/powder equivalent treatment." See [D.E. 281].

As for the "medical circumstances of the defendant" policy statement, the policy statement requires, in part, that the defendant be "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment

9

of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13(b)(1)(B). "To establish that the risk posed by COVID-19 presents an 'extraordinary and compelling reason' for release [under this subsection], a defendant must allege that the risk of contracting COVID-19 in a prison is higher than the risk outside the prison and that [her] preexisting medical condition increases [her] risk of experiencing a serious, or even fatal, case of COVID-19." United States v. Brown, 78 F.4th 122, 128 (4th Cir. 2023) (quotation omitted); see High, 997 F.3d at 185. This "inquiry is multifaceted and must account for the totality of the relevant circumstances." Bethea, 54 F.4th at 832 (quotations omitted); see Hargrove, 30 F.4th at 198. Courts examine whether "an inmate shows both a particularized susceptibility to COVID-19 and a particularized risk of contracting the disease at [her] prison facility." Brown, 78 F.4th at 128 (quotation omitted); see Hargrove, 30 F.4th at 196.

Baker merely conclusorily states she has "medical conditions" that may increase her susceptibility to COVID-19. [D.E. 281] 1; see [D.E. 285] 2. Baker offers no information about her alleged medical conditions. See [D.E. 281] 1; [D.E. 285] 2. Baker fails to allege what conditions she has or whether she has received (or had the opportunity to receive) a COVID-19 vaccine. See [D.E. 281] 1; [D.E. 285] 2. Thus, Baker fails to show any "particularized susceptibility to COVID-19." Brown, 78 F.4th at 128 (quotation omitted).

Baker also fails to show "a particularized risk of contracting the disease at [her] prison facility." Brown, 78 F.4th at 128 (quotation omitted). BOP houses Baker at FPC Alderson. BOP has vaccinated 353 inmates at FPC Alderson and has just three open cases of COVID-19 among inmates. See BOP, Inmate COVID-19 Data, https://www.bop.gov/about/statistics/statistics_inmate_

10

covid19.jsp (last visited Mar. 1, 2024). BOP's aggressive vaccination efforts and robust COVID-19 procedures decrease Baker's risk of contracting the disease at FPC Alderson. See id.; BOP, COVID-19 Modified Operations Plan & Matrix, https://www3.fed.bop.gov/coronavirus/covid19_modified_operations_guide.jsp (last visited Mar. 1, 2024). Therefore, reducing Baker's sentence because of her alleged risk factors and the general risk of COVID-19 in the prison environment does not comport with U.S.S.G. § 1B1.13(b)(1)(B). See 18 U.S.C. § 3582(c)(1)(A).

As for the "unusually long sentence" policy statement, the policy statement instructs that if a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law may be considered as an extraordinary and compelling reason, but only after full consideration of the defendant's individualized circumstances. See U.S.S.G. § 1B1.13(b)(6). Baker again cites the 1:1 crack-powder ratio approved by the Department of Justice. See [D.E. 281] 1; [D.E. 285] 1–2. The Attorney General's memorandum, however, is not a change in the law. See, e.g., United States v. White, No. 1:12-cr-309, 2023 WL 5510306, at *2 (E.D. Va. Aug. 24, 2023) (unpublished) (collecting cases). Thus, reducing Baker's sentence on this ground does not comport with U.S.S.G. § 1B1.13(b)(6).

Baker also cites Amendment 821 and asks the court to reduce her criminal history category to a I or II under the advisory guidelines. See [D.E. 281] 1; see also [D.E. 285] 2. Part A of Amendment 821, inter alia, limits the application of status points (i.e., criminal history points a defendant receives if "the defendant committed the instant offense while under any criminal justice sentence") to only those defendants with at least seven criminal history points. See U.S. Sent'g Guidelines Manual app. C, amend. 821 (U.S. Sent'g Comm'n 2023); U.S.S.G. § 4A1.1(e) (2023). Part A of Amendment 821 is retroactive. See U.S.S.G. § 1B1.10(d). Baker received two points because she committed the instant offense while on probation and six criminal history points total.

11

See PSR ¶¶ 27–28. Thus, Baker has four criminal history points after the court subtracts two status points. Four criminal history points yields a criminal history category of III, which changes nothing for Baker. See U.S.S.G. ch. 5, pt. A; see also [D.E. 261] 2. Therefore, no change in the law affects Baker's sentence. Thus, reducing Baker's sentence does not comport with U.S.S.G. § 1B1.13(b)(6).[2]

If Baker moves for relief under Amendment 821 independent of her compassionate release motion, Amendment 821 "does not have the effect of lowering the defendant's applicable guideline range." U.S.S.G. § 1B1.10(a)(2)(B). Thus, reducing Baker's sentence does not comport with U.S.S.G. § 1B1.10. See id.; see, e.g., United States v. Chapman, No. 2:19-cr-58, 2024 WL 474905, at *2 (S.D.W. Va. Feb. 7, 2024) (unpublished).

As for the "other reasons" policy statement, the court assumes without deciding that the COVID-19 pandemic, Baker's medical conditions, Baker's rehabilitation efforts, Baker's release plan, and changes to the advisory guidelines are extraordinary and compelling reasons under section 3582(c)(1)(A). As discussed, however, the section 3553(a) factors counsel against reducing Baker's sentence. See Hargrove, 30 F.4th at 194–95, 198–200; High, 997 F.3d at 186; Kibble, 992 F.3d at 331–32.

The court has considered Baker's risk for exposure to COVID-19, her medical conditions, her poor performance on supervised release, her recent positive efforts while incarcerated, and her

---

[2] Baker also cites three of her North Carolina convictions and asks the court to further reduce her criminal history category because the three convictions fall outside "the 10 year window of USSG [§] 4A1.2(e)." [D.E. 281] 1; see [D.E. 285] 2. This argument does not reflect a change in the law. Rather, Baker asserts that the court erred when it calculated Baker's advisory guideline range when the court sentenced Baker. Cf. U.S.S.G. § 4A1.2(e)(2)–(3) (2012). Baker's "exclusive method of collaterally attacking a federal conviction or sentence" is 28 U.S.C. § 2255. Ferguson, 55 F.4th at 270. Baker cannot use a compassionate release motion "to sidestep [section] 2255's requirements." Id.; see, e.g., Underhill v. United States, No. 4:08-cr-56, 2023 WL 8189751, at *6 (D.S.C. Nov. 27, 2023) (unpublished).

12

release plan. Cf. Pepper, 562 U.S. at 480–81; High, 997 F.3d at 187–91; McDonald, 986 F.3d at 412; Martin, 916 F.3d at 398. Having considered the entire record, the BOP's actions to address COVID-19, the section 3553(a) factors, Baker's arguments, the government's persuasive response, Baker's severe criminal conduct and criminal history, Baker's poor history on supervised release, Baker's rehabilitation efforts, and the need to punish Baker for her serious criminal behavior, to incapacitate Baker, to promote respect for the law, to protect society, and to deter others, the court declines to grant Baker's motion for compassionate release. See, e.g., Concepcion, 597 U.S. at 498–501; Chavez-Meza, 585 U.S. at 117–20; Pepper, 562 U.S. at 480–81; Troy, 64 F.4th at 185; Reed, 58 F.4th 821–24; Roane, 51 F.4th at 551–52; Hargrove, 30 F.4th at 198–200; Kibble, 992 F.3d at 331–32; High, 997 F.3d at 187–91; United States v. Ruffin, 978 F.3d 1000, 1008–09 (6th Cir. 2020); United States v. Chambliss, 948 F.3d 691, 693–94 (5th Cir. 2020); United States v. Hill, No. 4:13-CR-28, 2020 WL 205515, at *2 (E.D.N.C. Jan. 13, 2020) (unpublished), aff'd, 809 F. App'x 161 (4th Cir. 2020) (per curiam) (unpublished).

IV.

In sum, the court DENIES defendant's motion for a sentence reduction [D.E. 276] and defendant's motion for compassionate release [D.E. 281].

SO ORDERED. This _1_ day of March, 2024.

JAMES C. DEVER III
United States District Judge